*Anne Arundel County, Maryland v. 808 Bestgate Realty, LLC*, No. 38, September Term, 2021, Opinion by Booth, J.

**INTERPRETATION OF LOCAL CODE—ADMINISTRATIVE REVIEW OF BOARD OF APPEALS DECISION**

Under the plain language of Anne Arundel County Code ("Code") § 17-11-207(c), a developer was entitled to receive transportation impact fee credits for improvements made to a county road that went "over and above the adequate road facilities requirements" required by the Code. It is undisputed that the road improvements exceeded the requirements of the County's adequate road facilities provisions set forth in § 17-5-401 of the Code and were approved by the County's Engineer Administrator. Under the plain language of the Code, the developer was entitled to receive transportation impact fee credits and the County Board of Appeals of Anne Arundel County ("Board") erred in its interpretation of the Code.

**REMAND UNDER MARYLAND RULE 8-131(a)—WHERE PARTIES HAVE STIPULATED THAT THE ISSUE IS UNDISPUTED**

After the Court of Special Appeals raised an issue pertaining to the interpretation of the Code *sua sponte* and ordered a remand to the Board for consideration of the same, the parties stipulated that the code provision raised by the intermediate appellate court does not apply to the facts of this case. Given the County's concession that the code provision raised by the intermediate appellate court does not apply and that it has joined the developer's requested relief on that issue, the Court of Appeals determined that there was no reason for a remand to the Board on that issue.

Circuit Court for Anne Arundel County
Case No.: C-02-CV-18-002979
Argued: February 3, 2022

IN THE COURT OF APPEALS

OF MARYLAND

No. 38

September Term, 2021

ANNE ARUNDEL COUNTY, MARYLAND

v.

808 BESTGATE REALTY, LLC

*Getty, C.J.
*McDonald,
Watts,
Hotten,
Booth,
Biran,
Battaglia, Lynne A.,
  (Senior Judge, Specially Assigned),

JJ.

Opinion by Booth, J.

Filed: July 7, 2022

*Getty, C.J. and McDonald, J., now Senior Judges, participated in the hearing and conference of this case while active members of this Court. After being recalled pursuant to Maryland Constitution, Article IV, Section 3A, they also participated in the decision and adoption of this opinion.



Pursuant to Maryland Uniform Electronic Legal Materials Act (§§ 10-1601 et seq. of the State Government Article) this document is authentic.

Suzanne C. Johnson, Clerk

In this case, we must determine whether the County Board of Appeals of Anne Arundel County ("Board") erred when it denied a request by a developer, 808 Bestgate Realty, LLC's ("Bestgate"), for transportation impact fee credits in connection with certain road improvements that it made to a county road as part of a redevelopment project. Under the Anne Arundel County Code, § 17-11-207(c),[1] when transportation improvements are constructed in connection with a development project that provide "transportation capacity over and above the adequate road facilities requirements" required by § 17-5-401 of the Code, then "[t]ransportation impact fee credits shall be allowed[.]" There is no dispute that Bestgate proposed to construct improvements to Bestgate Road, which were approved by the County's Engineer Administrator, and that the improvements provided transportation capacity that was "over and above" the requirements of the County's adequate public facilities ("APF") standards that are applicable to roads. However, in a 4-3 decision, the Board determined that Bestgate was not entitled to transportation impact fee credits under its interpretation of § 17-11-207.

After the Board denied Bestgate's request for transportation impact fee credits, Bestgate appealed the decision to the Circuit Court for Anne Arundel County. The circuit court reversed the Board's decision. Anne Arundel County (the "County") filed an appeal to the Court of Special Appeals, which affirmed the circuit court in part, and reversed it in part. The intermediate appellate court determined that, under the plain language of § 17-11-

---

[1] All references to the Anne Arundel County Code are references to Article 17. For simplicity's sake, we shall sometimes refer to the provisions of Article 17 only by their Section reference.

207(c), the Board erred in its interpretation. *Anne Arundel County v. 808 Bestgate Realty, Inc.*, No. 1156, 2021 WL 1985434 (May 18, 2021) ("*808 Bestgate*"). However, the Court of Special Appeals remanded the case to the Board for further findings on an issue that it raised *sua sponte*—specifically, whether the improvements to Bestgate Road were "site-related transportation improvements" under the Code, which would render them ineligible for transportation impact fee credits. Because both parties agree that the road improvements are not "site-related improvements" under the provisions of the Code, they filed a joint motion for reconsideration of that issue, which the Court of Special Appeals denied.

The County and Bestgate each filed a petition for writ of *certiorari* to this Court, which we granted. We granted the County's petition to consider the following question, which we have rephrased as follows:

> Did the Board of Appeals err in denying Bestgate's application for transportation impact fee credits under the applicable language of the Anne Arundel County Code?[2]

We granted Bestgate's petition to consider the following question, which we have rephrased as follows:[3]

---

[2] The County's petition for writ of *certiorari* phrased the question as follows:

Is CSA's interpretation of § 17-11-207 of the Anne Arundel County Code in conflict with the County Charter and the County budget process as it relates to the funding of public improvements?

[3] Bestgate's petition for writ of *certiorari* phrased the question as follows:

Did the Court of Special Appeals abuse its discretion under Maryland Rule 8-131(a) in requiring remand on an issue not raised or briefed by the parties nor mentioned in the agency order under appeal, and not in dispute?

Given that both parties agree that the improvements to Bestgate Road are not "site-related improvements" as defined by the Code, and the County agrees that a remand to the Board is unnecessary for a determination of that issue, is a remand warranted?

For the reasons set forth below, we affirm the Court of Special Appeals' decision as to the first question, and as to the second question, we reverse the Court of Special Appeals' decision to remand the case to the Board to consider whether the improvements are "site-related" given the County's concession on that issue.

**I.**

**Factual Background and Procedural History**

*A.    The Redevelopment Project*

Bestgate redeveloped a 9.4-acre parcel located at 808–810 Bestgate Road in Annapolis. The redevelopment project included an addition to an existing veterinary clinic and the construction of a new four-story medical office building with an associated parking lot ("the Project"), which is accessible from Bestgate Road—a county road. Prior to the issuance of a building permit, Bestgate paid transportation impact fees to the County in the amount of $199,756 for the veterinary clinic and $590,775 for the medical office.

As part of the Project, Bestgate hired a traffic engineer, Traffic Concepts, Inc. ("Traffic Concepts"). Traffic Concepts performed a traffic impact study to determine if the Project complied with the County's APF road requirements, which mandate that road intersections at a development site will operate at a minimum "D" level of service and that the road sections will have a rating of 70 or higher. If a traffic impact study reveals that a development project will not meet these requirements, the County may mandate that the

3

developer construct mitigation improvements to bring the transportation facilities up to the standards in the Code.

The Project was initially designed with a right-in/right-out intersection from Bestgate Road.[4] The traffic impact study revealed that after development of the Project, with the right-in/right-out road network, the County road intersections would continue to operate at an acceptable level of service, and the road ratings would remain adequate. Accordingly, the traffic impact study concluded that no mitigation would be needed to satisfy the County's APF road requirements. Based upon these conclusions, the County approved the Project with the right-in/right-out intersection, without requiring any mitigation.

Even though mitigation was not required to satisfy the APF road requirements, Traffic Concepts recommended the construction of an off-site median break and traffic signal on Bestgate Road across from the entrance to the Project. In a May 2, 2017 letter to Larry Tom at the Office of Planning and Zoning, Kenneth Schmid, a Vice President of Traffic Concepts, explained that "[i]f the site were to retain the existing right-in/right-out access, vehicles wishing to enter the site from eastbound Bestgate Road would be forced to make a U-turn at the Medical Parkway intersection in order to enter the development,"

---

[4] The traffic impact study concluded that a right-in/right-out road access from Bestgate Road would require "left turn inbound and left turn outbound trips to be U-turns at the upstream and downstream intersections at Gate Drive and Severn Grove Road/Medical Parkway." In other words, for example, if a driver was approaching the development site traveling eastbound, the driver would have to make a U-turn at the Severn Grove Road/Medical Parkway intersection with Bestgate Road and then turn right into the Project site.

4

which would increase the "morning peak hour critical lane volume" at that intersection. With the median break and traffic signal, however, the critical lane volume would be reduced, which would both increase capacity and improve safety by eliminating the weaving requirement to attempt a U-turn movement.[5]

In that letter, Mr. Schmid requested approval of transportation impact fee credits for the "total cost of design and installation of the median break and traffic signal[,]" which was estimated to be $554,697.98. David Braun, the County's Engineer Administrator for the County's Department of Public Works, supervised the review of the traffic impact study and approved the plans and construction details for the median break and traffic signal on Bestgate Road as recommended by Traffic Concepts.[6]

Although the County's Engineer Administrator approved the Bestgate Road improvements, in a letter dated October 26, 2017, the County's Planning and Zoning Officer, Philip Hager, denied the request for transportation impact fee credits, on the basis

---

[5] Specifically, in the May 2, 2017 letter from Mr. Schmid to the Planning and Zoning Officer, Bestgate explained how the additional improvements would provide additional safety and capacity beyond the APF requirements by stating the following:

> In addition to increasing capacity, the median break and traffic signal will improve safety over the existing right-in/right-out condition because it will eliminate the weaving movement required to attempt a U-turn movement. The distance between the access and the U-turn movement is less than 400-ft in both directions. The U-turn movement is tight for larger cars, vans, and pick-up trucks. Some of these vehicles need to make multiple maneuvers to complete the U-turn movement. During peak times this could create safety issues.

[6] Bestgate has since completed the Project and constructed the additional off-site improvements to Bestgate Road as recommended by Traffic Concepts and approved by the County.

5

that: (1) there was no benefit to the County since the intersection was already operating at an "A" level; (2) the additional improvements were not associated with any traffic mitigation required by the County to satisfy the APF road requirements; (3) there were no capital improvement plan projects in the corridor associated with the Project; and (4) there were no deficiencies in the traffic impact study area.

Bestgate appealed to the Board, which reviewed the matter *de novo*.

### B.    *The Board Proceedings*

The Board heard testimony on the appeal on April 12 and May 22, 2018. Mr. Braun testified that he reviewed the traffic impact study and agreed that the Bestgate Road improvements would provide additional safety measures and capacity to the County's road network. Bestgate also introduced into evidence a written memorandum from Mr. Braun to the Office of Planning and Zoning which stated that "[t]he benefit to the County, as outlined in the proposal, is providing additional capacity at the Bestgate/Severn Grove Road intersection and improving safety due to the reduction in the number of U-turns."

Mr. Schmid, who was qualified as an expert traffic engineer, testified that the proposed improvements would eliminate both potential and existing U-turns and confirmed that the development would add to the congestion at the intersection of Severn Grove Road and Bestgate Road where U-turns are being made by people going to the existing veterinary clinic:

> And then we would be adding more left turns and U-turns onto that intersection by our site. So when we eliminate all those potential U-turns and the existing U-turns, we provide extra capacity at the intersection of Severn Grove Road and Bestgate Road. Now, it's acceptable capacity today, but we are providing additional capacity to that intersection by diverting that

6

traffic away. We're also providing extra capacity to the unsignalized U-turn movement up at Gate Drive, which was the other U-turn exit. And that wasn't a studied intersection in our analysis, but by not pushing traffic up there and making U-turns, you're providing capacity for that intersection.

In addition to explaining the benefits that the additional signal would provide to the Bestgate Road corridor generally, Mr. Schmid also described examples of similar road improvement projects in which he had been involved where the County granted transportation impact fee credits in similar situations.[7] Specifically, Mr. Schmid testified that the County had previously approved traffic impact fee credits for BWI Technology Park III which, like Bestgate, passed the APF road test without the requirement for any

---

[7] Impact fee credit agreements applicable to other development projects were admitted into evidence before the Board. The agreements reflected prior instances in which the County granted transportation impact fee credits for off-site improvements that provided additional transportation capacity.

For example, the transportation impact fee agreement between the County and Patel Associates, LLC states that the developer was eligible for transportation impact fee credits for those "[i]mprovements meeting the same needs as the transportation impact fees" by "providing expanded capacity over and above the requirements of Article 17, Title 11 of the Code." The eligible improvements were limited to "off-site" improvements providing "new road capacity and safety." The agreement provides for an accounting when the application for a building permit is made.

An agreement between the County and Creekstone Village contains similar language regarding "off-site improvements," stating that 100% of the off-site improvements providing "new road capacity" be eligible for credits and defining "the nature and amount" of the credits. The agreement requires that the developer maintain an accounting of the cumulative credits and provide the County with statements of the same upon request of the County at no more than quarterly intervals.

In the BWI Technology Phase III agreement, it was agreed that "100% of the total improvement [c]osts are attributable to off-site transportation improvements that provide new road capacity over and above the adequate road facilities requirements." It further provided that all credits had to be redeemed within 12 years.

mitigation. Mr. Schmid noted that the developer had received traffic impact fee credits for 100% of the improvements. Mr. Schmid testified that, in the case of the Creekstone Village Residential development on Jumpers Hole Road, the only required mitigation to pass the APF road requirements was trimming of vegetation to improve sight lines. Mr. Schmid testified that the developer had also received transportation impact fee credits for 100% of the improvements. In Mr. Schmid's view, the Planning and Zoning Officer's denial of the credits requested by Bestgate was inconsistent with the County's approvals of credits on other projects where minimal or no mitigation was required to comply with the APF road requirements.

The County's Planning and Zoning Officer, Mr. Hager, testified regarding his October 26, 2017 letter responding to Bestgate's request for impact fee credits:

> I believe the letter succinctly sets forth the reasons why the Office of Planning and Zoning denied the applicant's request in this particular instance. First of all, there does not appear to be any benefit to the county, only to the applicant. The county did not request the median break. They did not request the construction of the traffic control device. No inadequacies are being remedied in this particular case. The work that was performed by the applicant at this site was not part of something that was required by the adequacy of facilities requirements. In addition, there is no other project in the area that's been identified in any of our planning or transportation related studies, whether they be functional master plans, needs assessments or otherwise that identify a problem with regard[] to the need to actually construct this type of project, to cure some type of an existing deficiency. So it was based upon those factors that it was not found to be any reasonable

8

use, reasonable benefit to the taxpayers to have their funds utilized in this manner.

In cross-examination, Mr. Hager was asked about the Board's grant of transportation impact fee credits to Walmart in a previous case:[8]

> [Bestgate's Counsel]: So those were improvements to a state road. So that wasn't part of a required traffic mitigation to satisfy the county standards, correct?
>
> [Mr. Hager]: That was a state road.
>
>          \*         \*         \*
>
> [Bestgate's Counsel]: Okay. Now, I will refer back to the Walmart decision in which this Board referred to section 17.11.207[(]c[)]; are you familiar with that section of the Code?
>
> [Mr. Hager]: Yes.
>
> [Bestgate's Counsel]: And doesn't that state, transportation impact fee credits shall be allowed for transportation improvements providing transportation capacity over and above the adequate road facility requirements for a development project as set forth in this Code?
>
> [Mr. Hager]: I'm reading it here now as you're stating it. I've read this previously. What is your question, counsel?

---

[8] The Board's decision in Board Case No. BA2414A was presented to the Board as part of the record in this case. Although it was not admitted as an exhibit, counsel for Bestgate asked that the Board take judicial notice of its previous decision. In that case, Walmart appealed a decision of the Planning and Zoning Officer denying impact fee credits. Walmart was developing a retail store to replace and enlarge another development that had access to a state road and a county road. The State required improvements to the state road, including related utility and traffic signal modifications. In that case, Walmart argued that the state road improvements were not required to meet the County's APF road requirements, and therefore, it was entitled to transportation impact fee credits for the cost of those improvements. The Board—in a 4-member decision, with 3 other members not participating—found the language of § 17-11-207(c) "clear, unambiguous, and mandatory" and the improvements to the state road to be "over and above" the APF road requirements. The language of § 17-11-207(c) has remained the same since that decision.

9

[Bestgate's Counsel]: Well, the determination was the word "shall" would be an obligation, right, to grant credits? Would you interpret as a Planning and Zoning Officer, if you are reading a Code section that you "shall," that would be mandatory as opposed to discretionary?

\* \* \*

[Mr. Hager]: Yes. And I would interpret that that way. Except there is a couple of points in that passage that bear further scrutiny in terms of when that "shall" shall actually apply.

[Bestgate's Counsel]: Right. I understand. But the period is that -- and this is a section that was cited by this Board in the Walmart case, is that that language is clear, and unambiguous, and mandatory; you would agree with that?

[Mr. Hager]: Yes. In spite of that, we still interpret it differently, counsel.

[Bestgate's Counsel]: Okay. Alright. So it states that you are providing transportation capacity over and above adequate road facility requirements, that would be an enhancement to the road system that would benefit the public?

[Mr. Hager]: I think it's important to read item "A" above that which also talks about projects that may be allowed. And it's, it certainly seems clear to me that there has to be a public benefit to when that "shall" shall be applied.

[Bestgate's Counsel]: Okay. And so would it be your interpretation that if your staff said that an improvement would increase capacity and safety would you agree then that impact fee credits would be justified in a situation because it's increasing capacity on the road system?

[Mr. Hager]: No, sir. I disagree.

[Bestgate's Counsel]: You disagree even if your own staff would advise you as to that, an improvement was going to increase capacity?

[Mr. Hager]: There has to be an inherent public benefit to the utilization of the funds.

10

The Board, in a 4-3 decision, denied Bestgate's request for transportation impact fee credits based on its interpretation of § 17-11-207(c). Under the Board's interpretation, in order to receive the transportation credits, the developer must satisfy "two elements":

> First, the proposed improvements must increase transportation capacity over and above the APF requirements. Second, the County must allow the credits and memorialize the same in a written agreement. Pursuant to Section 17-11-207(c), impact fee credits are mandated when capacity is provided over and above the adequate road facilities requirements. APF requirements refer to mandated mitigation when new development cannot pass APF tests, as a means of adding traffic capacity. §§ 17-5-401(a)(3) and 17-5-901(h). If APF mitigation is not required, independent and additional improvements are not considered "above and beyond" the APF requirements. In this instance, all parties agree that the proposed development passed APF tests, and mitigation is not required; thus, there are no APF requirements to be mitigated. The proposed improvements are not "above and beyond" the APF requirements, and the Petitioner is not eligible for impact fee credits.

The Board's dissenting members found that the plain language of the Code was "clear and unambiguous" and that nothing in § 17-11-207(c) indicated that "mitigation must be a prerequisite to receive impact fee credits." The dissenting members of the Board stated that § 17-11-207(c):

> mandates that a "[t]ransportation impact fee credit **shall** be allowed for transportation improvements providing transportation capacity over and above the [APF] requirements for a development project . . ." (emphasis added). This section does not mandate that mitigation must be a prerequisite to receiving impact fee credits. Mr. Schmid testified regarding the increased benefit to all citizens of the County, including reduced U-turns and weaving movements. The proposed road improvements adhere to Section 17-11-202 of the Code, which promotes the health, safety, and general welfare of the residents of the County. The road improvements are over and above the APF requirements. The County is mandated to allow the transportation impact fee credits. Thus, we would grant the Petitioner's request for the impact fee credits.

11

Bestgate petitioned for judicial review of the Board's decision in the Circuit Court for Anne Arundel County.

### C. *The Circuit Court's Decision*

The circuit court reversed the decision of the Board, concluding that the plain language of § 17-11-207(c) does not condition the issuance of transportation impact fee credits upon the need for mitigation arising from a developer failing to satisfy the APF road test. The circuit court determined that the applicable language in the Code required the County to issue the transportation impact fee credits because Bestgate increased traffic capacity and safety beyond the APF road requirements. The circuit court also determined that the issuance of the transportation impact fee credits was not dependent upon the County and Bestgate reaching a written agreement on the same, concluding that the agreement is simply a memorialization of the credits to which the developer is entitled to receive under the Code. The County appealed the circuit court's decision to the Court of Special Appeals.

### D. *The Court of Special Appeals' Decision*

In the unreported opinion, the Court of Special Appeals affirmed the circuit court's interpretation of the County Code—that under the plain language of § 17-11-207(c), the issuance of the transportation credits was mandatory where non-site related improvements exceeded the APF road requirements, without regard to whether the developer had been required to construct mitigation improvements. *See 808 Bestgate Realty,* No. 1156, 2021 WL 1985434. The Court of Special Appeals also held that the County did not have discretionary authority to refuse to enter into a transportation fee credit agreement where

12

the eligible improvements went "above and beyond the APF requirements" of the Code. The Court of Special Appeals, however, remanded the case to the Board on an issue not raised during prior proceedings between the parties. Specifically, the intermediate appellate court remanded the case for the Board to determine whether the improvements to Bestgate Road would be considered "site-related" improvements, and therefore ineligible for consideration of transportation impact fee credits under the Code.

The parties filed a joint Motion for Reconsideration with the Court of Special Appeals on the limited issue pertaining to that court's decision to remand the case to the Board for a determination whether the improvements would be considered "site-related." In the Motion for Reconsideration, the parties stipulated that the Bestgate Road improvements were not "site-related" under the Code. The Court of Special Appeals denied the motion, after which both parties filed petitions for writs of *certiorari* in this Court.

## II.

### Discussion

#### A. *Standard of Review*

"When this or any appellate court reviews the final decision of an administrative agency such as the [Board of Appeals], the court looks through the circuit court's and intermediate appellate court's decisions, although applying the same standards of review, and evaluates the decision of the agency." *People's Council for Baltimore Cty. v. Surina*, 400 Md. 662, 681 (2007) (citations omitted).

13

There are two general standards of review for administrative agency decisions. With regard to findings of fact, "we affirm an agency's decision if there is substantial evidence in the record as a whole to support the agency's findings and conclusions." *Assateague Coastal Trust, Inc. v. Schwalbach*, 448 Md. 112, 124 (2016) (internal citations omitted). We review the agency's decision in the light most favorable to it, and we presume it to be valid. *Id.* When reviewing conclusions of law, however, no such deference is given to the agency's conclusion. *Id.*; *Belvoir Farms Homeowner's Ass'n, Inc. v. North*, 355 Md. 259, 267 (1999). When we are asked to consider a statute or an ordinance that an agency is charged with administering, "[a]lthough we often will give considerable weight to the agency's experience in interpreting a statute that it administers, it is within our prerogative to determine whether an agency's conclusions of law are correct, and to remedy the situation if found to be wrong." *John A. v. Board of Ed. for Howard Cty.*, 400 Md. 363, 382 (2007) (internal citations omitted); *see also Schwartz v. Maryland Dept. of Nat. Res.*, 385 Md. 534, 554 (2005) ("With respect to an agency's conclusions of law, we have often stated that a court reviews *de novo* for correctness. We frequently give weight to an agency's experience in interpretation of a statute that it administers, but it is always within our prerogative to determine whether an agency's conclusions of law are correct, and to remedy them if wrong.") (internal citations omitted).

## B. Principles of Statutory Interpretation

At issue in this case is whether the Board erred in its interpretation of § 17-11-207(c). When we interpret a local ordinance, we apply the same canons of construction to the local ordinance as we apply to the interpretation of state statutes. *See Howard Rsch.*

14

*and Dev. Corp. v. Concerned Citizens for Columbia Concept*, 297 Md. 357, 364 (1983) ("A charter or an ordinance generally is read and construed in the same manner as a statute."). "The cardinal rule of statutory interpretation is to ascertain and effectuate the real and actual intent of the Legislature." *Lockshin v. Semsker*, 412 Md. 257, 274 (2010). As we have explained, "we look first to the [plain] language of the statute, giving it its natural and ordinary meaning" to determine the purpose of the legislative body which enacted it. *75-80 Properties, LLC. v. Rale, Inc.,* 470 Md. 598, 623 (2020). We construe the statute "as a whole so that no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless or nugatory." *Koste v. Town of Oxford*, 431 Md. 14, 25–26 (2013) (internal quotation marks and citations omitted). Generally, we "will not divine a legislative intention contrary to the plain language of a statute or judicially insert language to impose exceptions, limitations or restrictions not set forth by the legislature." *Langston v. Langston*, 366 Md. 490, 515 (2001) (cleaned up). "We neither add nor delete language so as to reflect an intent not evidenced in the plain and unambiguous language of the statute, and we do not construe a statute with forced or subtle interpretations that limit or extend its application." *Lockshin*, 412 Md. at 275 (internal quotation marks and citations omitted). "We presume that the Legislature intends its enactments to operate together as a consistent and harmonious body of law, and, thus, we seek to reconcile and harmonize the parts of a statute, to the extent possible consistent with the statute's object and scope." *Lockshin*, 412 Md. at 276. If the language is clear and unambiguous, "we need not look beyond the

15

statute's provisions and our analysis ends." *Douglas v. State*, 423 Md. 156, 178 (2011)

(quoting *Evans v. State*, 420 Md. 391, 400 (2011)).

Before we turn to the parties' conflicting interpretations of § 17-11-207, it is helpful

to provide an overview of the applicable provisions of the Code related to development

impact fees, impact fee credits, and the adequate public facilities provisions related to road

requirements.

### C. County Code Provisions Establishing Development Impact Fees, Development Impact Fee Credits, and APF Requirements for Roads

#### 1. Development Impact Fees

In order to promote "the health, safety, and general welfare of the residents of the

County," all new development projects are subject to Article 17, Title 11, Subtitle 2 of the

Anne Arundel County Code. § 17-11-202.[9]  Under this article, a developer is required to

pay "its proportionate fair share of the costs for land, capital facilities, and other expenses

---

[9] Section 17-11-202 provides:

This title is adopted for the purpose of promoting the health, safety, and general welfare of the residents of the County by:

(1)    requiring all new development to pay its proportionate fair share of the costs for land, capital facilities, and other expenses necessary to accommodate development impacts on public school, transportation, and public safety facilities;

(2)    complementing the provisions of Title 5 by requiring that all new development pay its share of costs for reasonably attributable impacts; and

(3)    helping to implement the General Development Plan to help ensure that adequate public facilities for schools, transportation, and public safety are available in a timely and well planned manner.

16

necessary to accommodate development impacts on public school, transportation, and public safety facilities[.]" § 17-11-202(1). To ensure that a developer pays its fair share of impacts on County public facilities, the County has established "development impact fees," which are paid by "[a]ny person who improves real property and thereby causes an impact upon public schools, transportation, or public safety facilities[.]" § 17-11-203(a). The Code establishes a "fee schedule," which is based upon the square footage of the development project. § 17-11-204. Before a building permit can be issued for the development activity, the fees must be paid by the developer to the Department of Inspections and Permits. § 17-11-206. The funds collected from development impact fees must be used by the County "solely for capital improvements for expansion of the capacity of public schools, roads, and public safety facilities[.]" § 17-11-209(a).

### 2. *Development Impact Fee Credits*

In addition to establishing development impact fees, the Code also permits a developer to receive a monetary credit in certain circumstances to offset the amount owed in development impact fees. Section 17-11-207(a) applies to impact fee credits *generally* and provides:

> **When allowed.** Any conveyance of land or construction received and accepted by the County or the County Board of Education from a developer, including construction of a contract school by a developer or a developer's agent pursuant to an agreement with the Board of Education, may be credited against the development impact fee due if the conveyance or construction meets the same needs as the development impact fee in providing expanded capacity over and above the requirements of this article. If the developer wishes to receive credit against the amount of the development impact fee due for such conveyance or construction, the developer shall enter into a written Impact Fee Credit Agreement with the County prior to such conveyance or construction. The Impact Fee Credit Agreement shall provide

for establishment of credits and the procedure and time allowed for redemption of such credits. Development impact fee credits shall be claimed and applied at the time development impact fees are required to be paid.

In contrast to the provisions of subsection (a) that address impact fees *generally*, Section 17-11-207(c) specifically applies to *transportation* impact fee credits:

> **Transportation impact fee credits.** *Transportation impact fee credits shall be allowed for transportation improvements providing transportation capacity over and above the adequate road facilities requirements for a development project set forth in this article.* The development providing the capital improvements shall be allowed transportation impact fee credits in the amount provided in the Transportation Impact Fee Credit Agreement. Credit may not be given for site-related transportation improvements.

(Emphasis added).

### 3. *Adequate Road Facilities Requirements*

The County's APF requirements are set forth in Article 17, Title 5 of the Anne Arundel County Code.[10] The APF requirements that apply to road facilities are set forth in § 17-5-401(a). That section sets forth three ways that a development can satisfy the APF road requirements:

> (a) **Generally**. Except as provided in subsections (b) and (c), and in § 17-6-504(9), a development *passes the test for adequate road facilities* if

---

[10] Section 17-5-101 establishes the purposes of the Adequate Public Facilities Title, Title 5 of the Anne Arundel County Code, stating:

> The purpose of this title is to provide a growth management process that will enable the County to provide adequate public schools, roads, and other infrastructure facilities in a timely manner and achieve General Development Plan growth objectives. The process is designed to direct growth to areas where adequate public infrastructure exists or will exist. Another purpose of this title is to provide a predictable planning environment for the provision of adequate fire, road, school, sewerage, storm drain, and water facilities by requiring certain developments to pass certain tests as a condition of subdivision or site development.

in the scheduled completion year of the development it creates 50 or fewer daily trips *or* if:

(1) the road facilities in the impact area of the proposed development will operate at or above the minimum of 'D' level of service after including the traffic generated by the development; *and*

(2) road facilities in the impact area of the proposed development will have an adequacy rating of not less than 70 as defined by the Anne Arundel County road rating program or, if not rated by the Anne Arundel County road rating program, have been found by the County to be adequate with respect to road capacity, alignment, sight distance, structural condition, design, and lane width …; *or*

(3) the developer has an approved mitigation plan under §§ 17-5-901 et seq.

§ 17-5-401(a) (emphasis added).  In other words, if the development creates more than 50 trips per day and cannot satisfy the requirements of subsections (1) and (2), the developer may pass the APF road requirements by implementing an approved mitigation plan under subsection (3).

### D.    *Parties' Contentions*

The County argues that, in order to receive transportation impact fee credits under § 17-11-207(c), the proposed development must first fail to satisfy the APF road test under § 17-5-401(a)(1) and (2), thereby requiring that the developer undertake mitigation approved by the County under subsection (3).  According to the County, *if and only if* a mitigation plan is required, *and* the mitigation improvements go "over and above" the necessary to satisfy the APF road requirements, the developer is then eligible for transportation impact fee credits.  The County argues that, under a contrary interpretation

19

of the applicable code provisions, a developer would be entitled to receive transportation impact fee credits for improvements that are neither necessary nor approved by the County. The County's position is that permitting a developer to receive transportation impact fee credits where no mitigation is required would lead to an "illogical result" because the developer—not the County—would be directing the County's transportation priorities and the expenditure of funds on capital improvement projects.

In addition, the County asserts that under § 17-11-207(a), impact fee credits may only be given when the County is willing to enter into a transportation fee credit agreement. The County asserts that it has discretionary authority to enter into a transportation fee credit agreement. Here, the County states that it is unwilling to enter into such an agreement because it contends that the road improvements do not provide a general benefit to the public.

Bestgate asserts that there is nothing in the plain language of § 17-11-207(c) that conditions the availability of transportation impact fee credits upon the development failing the APF road requirements thereby triggering mitigation improvements. Bestgate argues that the plain language of the code section is clear—if the transportation improvements go "over and above" those required by the adequate public road facilities requirements, then the County *shall* give transportation impact fee credits. Bestgate points out that its plain language interpretation is supported by the County's approval of transportation impact fee credits on similar projects that did not involve the construction of mitigation improvements to satisfy the APF road requirements. Bestgate further contends that its interpretation does not place the developer in a decision-making role vis-à-vis County capital road

20

improvement projects, noting that the County's Engineer Administrator reviewed and approved the off-site improvements to Bestgate Road. We agree with Bestgate.

### E. Bestgate is Entitled to Transportation Impact Fee Credits under § 17-11-207(c)

First, it is undisputed that Bestgate's traffic impact study reflected that the Project would satisfy the APF road requirements without the need for a mitigation plan. Specifically, the traffic impact study demonstrated that, once the Project was completed, Bestgate Road would continue to operate at an "A" level of service. Although no mitigation plan was required, Bestgate's traffic engineer recommended off-site improvements to Bestgate Road, which would improve traffic conditions along the Bestgate Road corridor generally by reducing U-turns. The County's Engineer Administrator, Mr. Braun, agreed and approved the off-site improvements to Bestgate Road. Mr. Braun testified that he supervised the review of the traffic impact study and determined that the proposed improvements would provide additional road capacity and would improve safety. He advised the County's Planning and Zoning Development Division that "[t]he benefit to the County, as outlined in the proposal, is providing additional capacity at the Bestgate/Severn Grove Road intersection and improving safety due to the reduction in the number of U-turns." He approved the plans and construction details for the improvements to the county road.

Under the plain language of the Code, "[t]ransportation impact fee credits *shall* be allowed for transportation improvements providing transportation capacity over and above the adequate road facilities requirements[.]" § 17-11-207(c) (emphasis added). We have

21

repeatedly held that the word "shall" is mandatory. *See 75-80 Properties*, 470 Md. at 631 ("The term 'shall' connotes that an action is mandatory, not subject to discretion or satisfaction of further conditions."); *In re Najasha B.*, 409 Md. 20, 32–33 (2009) ("in the absence of a contrary contextual indication, the use of the word 'shall' is presumed to have a mandatory meaning . . . and thus denotes an imperative obligation inconsistent with the exercise of discretion.") (internal quotations and citation omitted); *see also Walzer v. Osborne*, 395 Md. 563, 580 (2006). There is no dispute that the off-site improvements to Bestgate Road approved by the County's Engineer Administrator went "over and above" the adequate road facilities requirements. In other words, the improvements were not necessary for the Project to satisfy the APF road test established by § 17-5-401(a).

The Board's interpretation of § 17-11-207(c)—in which a development must first fail to satisfy the APF road requirements thereby triggering the need for a mitigation plan in order to be eligible for transportation impact fee credits—would require that we insert language into the Code that does not exist. In other words, the Board's and the County's interpretation would require that we rewrite subsection (c) to condition the eligibility of transportation impact fee credits on the developer's providing improvements that go "over and above *the improvements required under a mitigation plan.*" "We neither add nor delete language so as to reflect an intent not evidenced in the plain and unambiguous language of the statute, and we do not construe a statute with forced or subtle interpretations that limit

22

or extend its application." *Lockshin*, 412 Md. at 275 (internal quotation marks and citations omitted).

Nothing in the plain language of § 17-11-207(c) conditions the developer's entitlement to transportation impact fee credits on the necessity of a mitigation plan under § 17-5-401(a)(3). Like the Court of Special Appeals, we read § 17-11-207(c) to refer to the "adequate road facilities requirements" established *generally* under § 17-5-401(a) and not simply those that require a mitigation plan under § 17-5-401(a)(3). *808 Bestgate*, No. 1156, 2021 WL 1985434 at *7. If non-site related improvements provide "transportation capacity over and above" those requirements, § 17-11-207(c) clearly states that impact fee credits "shall" be allowed for those improvements.

We are unpersuaded by the County's argument that the plain language interpretation of § 17-11-207(c) will lead to an absurd or illogical result. First, the County has adopted the *same* interpretation in connection with other development proposals in which the credits have been granted without the need for mitigation. As reflected in Mr. Schmid's testimony and the agreements discussed in note 7 herein, the undisputed evidence before the Board reflected that the County has approved requests for credits where no mitigation was necessary to satisfy the APF road requirements.

Second, if the County determined that the developer's proposed improvements would not add to the transportation capacity or enhance public safety of county roads, it could simply deny the approval of the same. The County retains the sole authority to

approve or deny improvements that are being proposed to a county road. Here, the County's Engineer Administrator approved the improvements.

Third, if the County wants to provide discretionary approval, it could simply amend the language of the Code. The County has the authority to amend its Code to reach the interpretation that it seeks here—to limit the availability of the transportation impact fee credits to those instances where a developer must first undertake improvements as part of an approved mitigation plan, and the improvements exceed those required by the mitigation plan. However, until such time as the County chooses to amend the Code, the Court will interpret it consistent with its plain language.

Nor are we persuaded by the County's argument that the language contained in § 17-11-207(a) provides the County discretionary authority to deny transportation impact fee credits for non-site related improvements. Section 17-11-207(a), which relates to impact fees *generally*, states that "land or construction received and accepted . . . from a developer . . . may be credited" against an impact fee obligation.[11] Although subsection (a) uses the word "may" in discussing credits for public improvements or a dedication of land in other contexts, no such discretionary language is included under subsection (c) for *transportation* impact fee credits. Reading the two subsections together, subsection (a) does not provide the County with discretionary authority to deny transportation impact fee credits for non-site related improvements under subsection (c), which specifically states that the credits "shall" be given. Like the Court of Special Appeals, we determine that there is no conflict

---

[11] As discussed *supra*, development impact fees are required not simply for road impacts, but also for public school and public safety facilities. *See* § 17-11-202.

between § 17-11-207(a) and (c). *808 Bestgate*, No. 1156, 2021 WL 1985434 at *7. But even if there were a conflict, the more specific language of subsection (c) would control. *See, e.g.*, *State v. Ghajari*, 346 Md. 101, 115 (1997) (noting that when two statutes appear to apply to the same situation, the Court will attempt to give effect to both statutes to the extent that they are reconcilable. But if two statutes, one general and one specific, are found to be in conflict, the specific statute is controlling.); *Mayor and Town Council of Oakland v. Mayor and Town Council of Mountain Lake Park*, 392 Md. 301, 316–17 (2006).

We further determine that the "agreement" required under § 17-11-207(c) relates to the process for awarding the credits, such as the timing and duration, and does not provide the County with discretionary authority to deny credits for non-site related transportation improvements that fall within the plain language of that subsection.[12] In other words, the fact that the Code requires that the credits are to be memorialized in an agreement does not negate the mandatory language in subsection (c) that transportation impact fee credits for non-site related improvements *shall* be given.

### F. Given the Parties' Stipulation that the Improvements are Not "Site-Related," a Remand is Unnecessary

After holding that the Board erred in denying Bestgate transportation impact fee credits based on the Board's reasoning that mitigation was a prerequisite to receiving credits under § 17-11-207(c), the Court of Special Appeals nonetheless pointed out that

---

[12] Our interpretation is consistent with the agreements that we mentioned in note 7 *supra*. Those agreements memorialize the duration and timing of the developers' receipt of the credits, and the accounting for the same, not whether the developer was entitled to receipt in the first instance.

under subsection (c), the credits would not be permitted if the Bestgate Road improvements were considered to be "site-related" improvements. *See* § 17-11-207(c) (stating that "[c]redit may not be given for site-related transportation improvements[]").[13]

Under Maryland Rule 8-131(a), "[o]rdinarily, the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court, but the Court may decide such an issue if necessary or desirable to guide the trial court or to avoid the expense and delay of another appeal." In this case, no party has argued that the off-site improvements to Bestgate Road are "site-related improvements" under the Code.

In the briefs and oral arguments before this Court, the parties agreed that improvements to Bestgate Road are not "site related" as that term is defined under the Code. Specifically, in response to Bestgate's arguments contained in its brief on this issue, the County filed a Line with this Court stating that it "does not oppose the relief sought" by Bestgate on that issue and would not be filing a brief or presenting argument on the same. During the oral arguments to this Court, we asked the question: "Do you agree that the improvements were not site related?" The County Attorney replied, "Yes."

---

[13] "Site-related transportation improvements" are defined under § 17-11-201(9) as:

> capital improvements and dedications and conveyances of rights-of-way for site driveways and roads, right and left turn lanes leading to and from site driveways, traffic-control measures for site driveways, frontage roads, acceleration and deceleration lanes, roads necessary to provide direct access to a development, local road improvements required by this article, and any other direct access improvements.

26

Given that the County does not dispute the interpretation of its own Code provisions on this issue, we determine that under Maryland Rule 8-131(a), a remand to the Board to resolve the same is not "necessary or desirable . . . to avoid the expense and delay of another appeal." Considering the County's concession, we see no reason for this case to be remanded to the Board on this issue.

## III.

### Conclusion

Under the plain language of § 17-11-207(c), Bestgate was entitled to receive transportation impact fee credits for improvements made to Bestgate Road that went "over and above the adequate road facilities requirements" required by the Code. It is undisputed that the road improvements exceeded the requirements of the County's adequate road facilities provisions and were approved by the County's Engineer Administrator. Under the plain language of the Code, Bestgate was entitled to receive transportation impact fee credits, and the Board erred in its interpretation of the Code.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED IN PART AND REVERSED IN PART. CASE REMANDED TO THE COURT OF SPECIAL APPEALS WITH INSTRUCTIONS TO REMAND THE CASE TO THE CIRCUIT COURT, WITH FURTHER INSTRUCTIONS TO REMAND THE CASE TO THE BOARD OF APPEALS FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY THE PETITIONER ANNE ARUNDEL COUNTY, MARYLAND.**

27